IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

CRYSTAL T. DAVIS,

                              Plaintiff,

                    v.                          Civil Action Number 3:09cv557

BENNY D. BACK, II,

                              Defendant.

## MEMORANDUM OPINION

This matter is before the Court on the Defendant's Motion to Dismiss pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure (Docket No. 6).  The Court dispenses with oral

argument because it would not assist in the decisional process.  For the reasons set forth herein, the

Court will grant the Defendant's motion.

## I. BACKGROUND

### A.      Factual Background

The Plaintiff, Crystal T. Davis, is a 24-year-old woman who was arrested on felony charges

after a search of 4823 Altair Road, Richmond, Virginia, a residence located in Henrico County that

the Plaintiff shared with her parents ("the residence").  The arrest was effectuated by the cooperative

efforts of the George Mason University ("GMU") Police Department (employer of Thomas W.

Bacigalupi (the defendant in case #3:09cv556) ("Officer Bacigalupi")), the William & Mary ("Wm.

& Mary") Police Department, the employer of Benny D. Back, II, the defendant in the instant case

("the Defendant" or "Defendant Back"), and the Henrico County Division of Police (the defendant

in case # 3:09cv558 ("the Henrico Police"). This arrest, and the Plaintiff's subsequent second arrest, were the products of the events detailed herein.

On or about February 13, 2006, GMU was the victim of a burglary by breaking and entering in which certain electronic equipment was taken. Curtis P. White ("Mr. White"), Conor Harris ("Mr. Harris"), and possibly a third suspect, initially believed to be the Plaintiff, were photographed and videotaped committing the crimes. Mr. White had been one of the Plaintiff's roommates on or near the Wm. & Mary campus in Williamsburg, Virginia since December of 2005. On June 6, 2006, Blue Ridge Computers, an entity created by Mr. White, invoiced BPAI, LLC ("BPAI"), an electronics dealer in Baltimore, Maryland, the amount of $2,000 for the stolen electronic equipment. The Invoice directed BPAI to "[m]ake all checks payable to Crystal Davis." That same day, BPAI wrote a $2,000 check, drawn on an account at Wachovia Bank, to the Plaintiff, Crystal Davis. The check was endorsed and deposited by the Plaintiff at the Virginia Credit Union, and it was collected through the Credit Union Service Center on or about June 7, 2006. The Plaintiff insists that the $2,000 check simply represented rent money owed to her by Mr. White. Bank records linked the checks to the Plaintiff and the residence at 4823 Altair Road. Mr. White and/or Mr. Harris gave statements to Detective Mark Riley of the Lexington, Virginia Police Department, apparently linking the Plaintiff to the GMU burglary.

On September 6, 2007, Officer P. Millan of the GMU Police ("Officer Millan"), as Applicant, made probable cause representations to Fairfax County Magistrate Marla McCormick ("Magistrate McCormick"), who issued Arrest Warrants for three felony charges against the Plaintiff under Virginia Code Sections 18.2-178, 18.2-22 & 18.2-95, and 18.2-108 for the theft of U.S. currency and computer equipment. Following the issuance of the Arrest Warrants, Officer

Bacigalupi presented in an Affidavit to Henrico County Magistrate J. Robinson ("Magistrate Robinson") his factual justification to search the residence. Such factual justification, contained in Item 4 of the Affidavit, included the Officer Bacigalupi's representation that items stolen from GMU were sold to BPAI, and a check for the proceeds of the sale was written to the Plaintiff and deposited in the Plaintiff's bank account. In Item 6 of the Affidavit, the Officer Bacigalupi represented that the reliability of this factual justification could be determined by considering the facts that (1) Lexington Detective Mark Riley sent photos to Officer Bacigalupi of "a suspect" who Detective Riley had identified through bank records and a statement from Mr. Harris and (2) "[i]t was further discovered that another check was written to Ms. Crystal T. Davis of 4823 Altair Road, Richmond, VA 23231" that was cashed by Ms. Davis at her bank.[1] The Plaintiff contends that Detective Riley "never implicated [her] in any way" and expressed his belief that the Plaintiff was "duped into endorsing a check by Mr. White." In the Affidavit, Officer Bacigalupi sought to search the residence for (1) master keys belonging to GMU, (2) GMU's electronic equipment, (3) computers with email correspondence, and (4) paper records of the suspect transactions. Magistrate Robinson authorized the search and issued a Search Warrant at 7:36 p.m. on September 6, 2007.

When the police arrived at the residence at approximately 9:00 p.m. on September 6, 2007, the Plaintiff opened the door after Officer Bacigalupi announced that the Plaintiff's father "was on the phone and said it was OK to open the door." The Plaintiff maintains that Officer Bacigalupi's announcement was a lie and that her father had given no such instruction to Officer Bacigalupi.

---

[1]The Court must note that it is unclear in the Affidavit exactly who the "suspect" identified by Detective Riley actually was, how many checks were alleged to have been written to the Plaintiff by BPAI, and how it was discovered that the Plaintiff was the receiver of the BPAI check(s). Indeed, it appears that even GMU's Chief of Police acknowledged that "the affidavit is not perfectly clear." *See* Pl.'s Response Br. at 1-2.

During their search, the GMU police confiscated the Plaintiff's two computers, a jump drive, and some assorted papers from the residence. Subsequent to the search, the Plaintiff was arrested, read her *Miranda* rights, and questioned by Officer Bacigalupi.[2] She was also questioned by Officer Back before being handcuffed and then transported by the Henrico Police to their "West-end Station," where she waived her right to remain silent and executed a *Miranda* waiver before being questioned for several hours and put into jail.

In a handwritten statement given to the Henrico Police, the Plaintiff confessed to (1) knowing and living with Mr. White at Wm. & Mary in Williamsburg, (2) watching Mr. White use a master key to open the Wm. & Mary Recreation Center Commons after hours, (3) seeing a stash of "whitish computers" in the Plaintiff's and Mr. White's Williamsburg house for which she could not account, (4) receiving a check related to a Baltimore pawn shop (BPAI) from Mr. White, and (5) knowing that Mr. White "would steal a key and/or the entire lock and hand-file a key for himself." *See* Def.'s Supp. Mem. Ex. I at 1-2. On September 10, 2007, the Plaintiff was transported from the Henrico facility to Fairfax County jail, and she was released the following day on pre-trial probation.

On or about September 14, 2007, felony charges were placed against the Plaintiff and others in connection with the GMU electronic equipment burglary. The Plaintiff cooperated with Fairfax County's prosecutor who determined her to be a "minor player" in the crimes, and all of the charges against the Plaintiff were *nolle prossed* on November 14, 2007. The Plaintiff contends that the charges were *nolle prossed* because Fairfax County knew that "they had no case against [the

---

[2]The Plaintiff alleges that "[she] was taken into custody and read the Miranda Rights by Thomas W. Bacigalupi." Pl.'s Compl. at 2. The Court construes this as alleging that Officer Bacigalupi was the law enforcement official who actually arrested – or "seized" – the Plaintiff on September 6, 2007. It does not appear that Officer Bacigalupi was the law enforcement official who placed the Plaintiff in handcuffs.

Plaintiff]" because she was neither present for, nor a party to, the GMU burglary.  She reiterates that she "did not commit the crimes for which [she] was arrested."

Additionally, as a result of the Plaintiff's September 7, 2007 handwritten statement, Officer Back also secured a felony Warrant of Arrest against the Plaintiff in James City County related to the Plaintiff's participation in the alleged breaking and entering of the Wm. & Mary Recreation Center Commons.  The Plaintiff does not dispute the fact that she entered the Recreation Center Commons after hours, but she does insist that she was unaware that Mr. White intended to commit a crime once inside, explaining that "[m]any of us had keys to the facility from time-to-time."  The Plaintiff was arrested on Officer Back's warrant by an unnamed law enforcement official while in class on September 26, 2007.  The charge was ultimately modified to misdemeanor trespass and dismissed by the trial judge on December 22, 2008.

The Plaintiff now complains (1) about her father having to make five demands to see the Search Warrant; (2) of several errors in the Henrico County Search Warrant including listing her birth date incorrectly and listing her race as "white" instead of "black;" (3) that the search of her residence exceeded the scope of the Warrant as to items to be examined; (4) that the search of the residence at night was not justified and was based on manufactured evidence; (5) that Sgt. Riley of Lexington could not implicate her in any crime; (6) that she was handcuffed; (7) that the execution of the residential search employed "shock and awe" tactics and "caused undue danger and turmoil;" (8) that GMU Police lied to gain entry; (9) that she was not treated well following her arrest because she was "shackled and escorted by two armed, sizable Caucasian men," denied bail, and left to sleep in "a refrigerator like cell;" and (10) that her computers were ultimately returned to her in non-working order, resulting in the loss of "important course work" that caused a delay in her graduation

from college. According to the Plaintiff, these events humiliated her and caused her and her family stress, hardship, and financial losses.

## B. Procedural Background

The Plaintiff filed her Complaint on September 9, 2009. On October 22, 2009, the Defendant moved to dismiss the Plaintiff's Complaint for failure to state a claim upon which relief can be granted.[3] The Plaintiff responded to the motion on November 13, 2009 (Docket No. 10), the Defendant replied on November 17, 2009 (Docket No. 11). Accordingly, this matter is ripe for the Court's decision.

In her Complaint, the Plaintiff makes no specific jurisdictional allegations except to state that the Defendant violated "my civil rights and those of my parents, Fourth Amendment to the U.S. Constitution." Pl.'s Compl. at 5. She defines these rights as her "basic rights as a citizen of the United States of America as it relates to search, seizure, and arrest." *Id.* Preliminarily, the Court notes that the Plaintiff does not have standing to sue for any injury alleged to have been suffered by her parents, so any claims purportedly brought on their behalf will be dismissed. *See Friends for Ferrell Parkway, LLC v. Stasko*, 282 F.3d 315, 319 (4th Cir. 2002) (To meet Article III's constitutional standing requirement, a plaintiff must show that (1) *she* has suffered an injury in fact, (2) the injury is fairly traceable to the challenged action of the defendant, and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.). The Court notes also that the allegations contained in a *pro se* complaint are "h[e]ld to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However,

---

[3]The Defendant's motion to dismiss was accompanied by a proper *Roseboro* Notice (Docket No. 7) pursuant to Rule 7(k) of the Local Rules of Civil Procedure.

the Supreme Court has made clear that it "ha[s] never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." *McNeil v. United States*, 508 U.S. 106, 113 (1993). Thus, while the Court must extend leeway to the *pro se* Plaintiff, such leeway must be tempered to require the Plaintiff to comply with the Federal Rules of Civil Procedure, specifically, here, the pleading requirements of Rule 8. In testing the sufficiency of the *pro se* Plaintiff's Complaint under Rule 12(b)(6), the Court will also consider the allegations made in the Plaintiff's memorandum filed in opposition to the Defendant's motion to dismiss. *See Rush v. Am. Home Mortgage, Inc.*, No. WMN-07-CV-0854, 2009 WL 4728971, slip op. at 3 (D. Md. Dec. 3, 2009) (the court can consider additional facts alleged in a *pro se* litigant's response brief due to the court's obligation to construe liberally a *pro se* Complaint); *Donahue v. U.S. Dep't of Justice*, 751 F. Supp. 45, 49 (S.D. N.Y. 1990), *abrogated on other grounds by Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004) (holding that, due to "[t]he court's duty to adopt a generous attitude when evaluating a pro se complaint," it would consider the allegations in the plaintiff's opposition to the motion to dismiss where they are consistent with the allegations in the complaint); *Smith v. Blackledge*, 451 F.2d 1201, 1202-03 (4th Cir. 1971) (holding that a document denominated by the plaintiff as one to "further particularize" the complaint, which included new claims, but construed by the District Judge as an opposition to the defendants' motion to dismiss should have been considered an amendment to the complaint); *Riner v. Edwards*, Civ. No. 7:07-cv-00455, 2008 WL 4388788, at *6 (W.D. W. Va. Sept. 26, 2008) (holding that the court would construe the plaintiff's opposition to the motion to dismiss to the extent that it raised new claims because of the "less stringent" pleading standards to be accorded *pro se* plaintiffs); *Motto v. Correctional Med. Servs.*, Civ. No. 5:06-cv-00163, 2007 WL 2897854, at *3 (S.D. W. Va. Sept.27,

2007) (upholding the magistrate judge's decision to consider the plaintiff's response brief as a pleading because "the court is charged with liberally construing a pleading filed by a pro se litigant to allow for the development of a potentially meritorious claim").

Therefore, the Court construes the Plaintiff's Complaint, in conjunction with the Plaintiff's response memorandum, as having brought the following claims: (1) a substantive due process claim under 42 U.S.C. § 1983 ("Count One"), (2) a Fourth Amendment unlawful arrest claim under 42 U.S.C. § 1983 ("Count Two"), (3) a Fourth Amendment excessive force claim under 42 U.S.C. § 1983 ("Count Three"), (4) a Fourth Amendment unlawful search claim under 42 U.S.C. § 1983 ("Count Four"), (5) a Fourth Amendment unlawful seizure of property claim under 42 U.S.C. § 1983 ("Count Five"), (6) a Fourth Amendment malicious prosecution claim under 42 U.S.C. § 1983 ("Count Six"), and (7) a malicious prosecution claim under Virginia common law ("Count Seven").[4] In his motion to dismiss, the Defendant construed the Plaintiff's Complaint as having charged Defendant Back, a state actor, of depriving the Plaintiff of her rights under constitutional and federal law, with 42 U.S.C. § 1983 providing a judicial remedy under certain circumstances. However, the Defendant explicitly addressed only the Plaintiff's (1) substantive due process, (2) Fourth Amendment unlawful arrest, and (3) Fourth Amendment excessive force claims under § 1983. Thus, the Defendant did not expressly move to dismiss the Plaintiff's § 1983 unlawful search, unlawful

---

[4]While the Plaintiff references by name only her rights under the "Fourth Amendment," given that the Plaintiff is a *pro se* litigant untrained in drawing complaints stating specific causes of action, the Court construes the Complaint as having brought a claim under Virginia common law that the Plaintiff's arrest and subsequent prosecution were instituted by, or with the cooperation of, the Defendant, without probable cause, and with malice, and that the prosecution terminated in a manner not unfavorable to the Plaintiff. In so construing the Complaint, the Court emphasizes the pleading principle that "[f]actual allegations alone are what matters.'" *Northrop v. Hoffman of Simsbury, Inc.*, 134 F.3d 41, 46 (2d Cir. 1997) (quoting *Albert v. Carovano*, 851 F.2d 561, 571 n.3 (2d Cir.1988) (en banc)).

seizure of property, or malicious prosecution claims, nor did the Defendant move to dismiss the Plaintiff's state law malicious prosecution claim. Nevertheless, given that a malicious prosecution claim under § 1983 essentially requires a preliminary showing of "unlawful arrest" under § 1983, the Court will construe the Defendant's motion as having moved to dismiss the Plaintiff's § 1983 malicious prosecution claim based on failure to state an unlawful arrest claim. For largely the same reason, the Court will also construe the Defendant's motion as having moved to dismiss the Plaintiff's state law malicious prosecution claim. The Court will not, however, construe the Defendant's motion to dismiss as having moved to dismiss the Plaintiff's unlawful search or unlawful seizure of property claims, as the Defendant's arguments presently before the Court do not address either of these claims in any substantive way.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint[.]" *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. ----, ----, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do."

*Twombly*, *supra*, 550 U.S. at 555. Likewise, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" *Iqbal*, *supra*, 556 U.S. at ----, 129 S.Ct. at 1949 (quoting *Twombly*, *supra*, 550 U.S. at 557).

As a general rule, a Rule 12(b)(6) motion to dismiss for failure to state a claim does not permit the Court to look outside the complaint. *See* Fed. R. Civ. P. 12(d); *Gasner v. County of Dinwiddie*, No. 3:05cv378, 162 F.R.D. 280, 281 (E.D. Va. 1995). Indeed, the Rules require that if the Court does consider "matters outside the complaint" it must convert the motion into a motion for summary judgment, affording the parties a "reasonable opportunity to present all material made pertinent to such a motion." *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1471 (4th Cir. 1991). However, a court is permitted to consider matters on the public record in connection with a motion to dismiss without converting the motion to one for summary judgment. *See Papasan v. Allain*, 478 U.S. 265, 268 n.1 (1986). Additionally, "when a plaintiff fails to introduce a pertinent document as part of h[er] complaint, the defendant may attach the document to a motion to dismiss the complaint and the Court may consider the same without converting the motion to one for summary judgment." *Gasner*, 162 F.R.D. at 282. Such documents include "documents central to plaintiff's claim," as well as "documents sufficiently referred to in the complaint," but only "so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.*, No. 05-1378, 164 Fed. Appx. 395, 396 (4th Cir. Jan. 31, 2006) (citing *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001) and *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)). To that end, the Court will consider the records appended to the Defendant's Rule 12(b)(6) motion, as they include public records and other documents either central to the Plaintiff's claim or sufficiently referred to by inference in the

Complaint, and the authenticity of these documents is not disputed.[5]  Therefore, the Court will not convert the Defendant's motion to one for summary judgment under Rule 56, and will, instead, proceed under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### III. IMMUNITY

As an initial matter, the Defendant argues that he is immune to suit by the Plaintiff for the claims asserted.  The general approach of the federal courts to questions of immunity under § 1983 is well-established.  Although the statute on its face admits of no immunities, the Supreme Court has read it "in harmony with general principles of tort immunities and defenses rather than in derogation of them." *Imbler v. Pachtman*, 424 U.S. 409, 418 (1976).  The Court's "initial inquiry is whether an official claiming immunity under § 1983 can point to a common-law counterpart to the privilege he asserts." *Malley v. Briggs*, 475 U.S. 335, 339-40.  If "an official was accorded immunity from tort actions at common law when the Civil Rights Act was enacted in 1871, the Court next considers whether § 1983's history or purposes nonetheless counsel against recognizing the same immunity in § 1983 actions." *Id.* at 340.  Thus, while the Court looks to the common law for guidance, it does not assume that Congress intended to incorporate every common-law immunity into § 1983 in unaltered form. *Id.*  The Supreme Court has "ma[de] plain that '[f]or executive officers in general, . . . qualified immunity represents the norm.'" *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 807

---

[5]Exhibit A is the Plaintiff's Complaint; Exhibit B is the September 6, 2007 warrant for the Plaintiff's arrest under Virginia Code § 18.2-178**;** Exhibit C is the September 6, 2007 warrant for the Plaintiff's arrest under Virginia Code §§ 18.2-22 & 18.2-95; Exhibit D is the September 6, 2007 warrant for the Plaintiff's arrest under Virginia Code § 18.2-108; Exhibit E is the affidavit for the search warrant issued for the search of the residence; Exhibit F is a Blue Ridge Computers invoice indicating that all checks should be made payable to the Plaintiff; Exhibit G is the deposit receipt for the $2,000 check deposited into the Plaintiff's bank account; Exhibit H is the Plaintiff's *Miranda* waiver; and Exhibit I is the Plaintiff's handwritten statement.

(1982)).

A qualified immunity is recognized to avoid "excessive disruption of government" and to protect government officials performing discretionary functions from civil damage suits "insofar as [the officials'] conduct does not violate clearly established rights of which a reasonable person would have known." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Officials lose the protection of the immunity if they violate a constitutional or statutory right of the plaintiff and the right was clearly established at the time of the alleged violation such that an objectively reasonable official in the defendants' position would have known of it." *Id.*

When a law enforcement officer asserts that qualified immunity protects him from liability for a federal constitutional violation, as the Defendant does here, a court must consider two questions. First, the Court must determine, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Miller v. Prince George's County*, 475 F.3d 621, 626 (4th Cir. 2007) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Only if the answer is "yes" does the Court advance to "the next, sequential step," which is "to ask whether the right asserted was clearly established" at the time of the events at issue. *Id.* (quoting *Saucier*, *supra*, 533 U.S. at 201). The Court conducts this latter inquiry by determining whether a reasonable officer would have understood that his conduct violated the asserted right. *Id.* (citing *Saucier*, *supra*, 533 U.S. at 202). "[T]he answer to both Saucier questions must be in the affirmative in order for a plaintiff to defeat a defendant police officer's motion for summary judgment on qualified immunity grounds." *Id.* (quoting *Clem v. Corbeau*, 284 F.3d 543, 549 (4th Cir. 2002)).

Therefore, it is clear that "the degree of knowledge of the law imputed to government officials is that imputable generally to a reasonable official." *Porterfield*, *supra*, 156 F.3d at 567. Accordingly, "all but the plainly incompetent or those who knowingly violate the law" are protected. *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Additionally, "officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Id.* (quoting *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992)). It also follows that if no right is transgressed, our inquiry ends, because government officials cannot have known of a right that does not exist. *Id.* (citing *Jackson v. Long*, 102 F.3d 722, 728 (4th Cir. 1996)).

The Fourth Circuit has also recognized that "[t]he significant deference given to the judgment of government officials acting in good faith is particularly appropriate in cases involving law enforcement officials investigating serious crimes [because] . . . [t]he police must have the ability to move swiftly to solve crimes or to apprehend dangerous criminals before evidence is destroyed or becomes stale, witnesses die or vanish, or a suspect has a chance to escape or to repeat the crime." *Id.* "The ability of police officers to protect the public can be severely hampered . . . if their every decision is subject to second-guessing in a lawsuit." *Id.* (quoting *Torchinsky v. Siwinski*, 942 F.2d 257, 261 (4th Cir. 1991)). "Qualified immunity thus provides a 'safe-harbor' from tort damages for police officers performing objectively reasonable actions in furtherance of their duties. *Id.* "This is necessary because even the fear of personal financial liability might inhibit them from the conscientious discharge of their duties." *Id.*

Similarly, under Virginia law police officers are also afforded "qualified immunity," and such immunity exists "for actions taken in good faith and with probable cause." *Andrews v. Ring*, 266 Va. 311, 325 (2003). "A defendant who asserts the qualified immunity defense, not the

plaintiff, must allege and prove the elements comprising this defense." *Id.* (quoting *Jordan v. Shands*, 255 Va. 492, 499 (1998)).

## IV. ANALYSIS

The Defendant has moved to dismiss the Plaintiff's Complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. The Court has construed the Plaintiff's Complaint as having brought the following claims: (1) a substantive due process claim, (2) a Fourth Amendment unlawful arrest claim, (3) a Fourth Amendment excessive force claim, (4) a Fourth Amendment unlawful search claim, (5) a Fourth Amendment unlawful seizure of property claim, (6) a Fourth Amendment malicious prosecution claim, and (7) a malicious prosecution claim under Virginia common law. The Court will address each of the Plaintiff's claims and the Defendants' corresponding arguments in turn.

### A.       The Plaintiff's § 1983 Claims

42 U.S.C. § 1983 permits citizens of the United States to seek legal and equitable relief from persons who, under color of state law, deprive them of federally protected rights. *Inyo County, Cal. v. Paiute-Shoshone Indians of the Bishop Cmty. of the Bishop Colony*, 538 U.S. 701, 708 (2003); *see* 42 U.S.C. § 1983. Thus, to state a cause of action under § 1983, the Plaintiff must plead and prove (1) that some person deprived her of a federal right, and (2) that the person has done so under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970). Therefore, the first inquiry in a § 1983 suit is whether the plaintiff has been deprived of a right, privilege, or immunity secured by the Constitution or a federal law. *See Baker v. McCollan*, 443 US 137, 140 (1979). If the Plaintiff has been so deprived, then the Court will inquire as to whether the deprivation was caused by a person acting under color of state law. "[G]enerally, a public employee acts under color

of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *West v. Atkins*, 487 U.S. 42, 50 (1988). Thus, "[a] defendant in a § 1983 action [will] have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Id.* at 49 (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). In the instant case, the Defendant is a police officer employed by Wm. & Mary, a state institution. There is no doubt that the Defendant was acting in his official capacity during all times relevant to the Plaintiff's complained-of activity. Accordingly, the Defendant acted "under color of state law," and the Court will address below only whether the Plaintiff was deprived of a federal right.

### (1) Substantive Due Process

The Fifth and Fourteenth Amendments to the United States Constitution guarantee that no person shall be deprived of "life, liberty, or property without due process of law." U.S. Const. amend v & xiv. "In order to state a claim for a substantive due process violation under § 1983 a plaintiff must show that the defendant's conduct 'shocks the conscience.'" *Cruden v. Brinkley*, 175 F.3d 1013, No. 98-1224, table op. at 3 (4th Cir. March 22, 1999) (quoting *Temkin v. Frederick County Com'rs*, 945 F.2d 716, 723 (4th Cir. 1991)). In other words, the Plaintiff must show that the Defendant's conduct amounted to "a brutal and inhumane abuse of official power [that is] literally shocking to the conscience." *Temkin*, *supra*, 945 F.2d at 720 (internal quotation marks omitted). Indeed, the protections of due process run only to state action that is so very arbitrary and irrational as to be unjustified by circumstance or governmental interest. *Rucker v. Harford County*, 946 F.2d 278, 281 (4th Cir. 1991).

The Plaintiff contends that the Defendant and others in law enforcement did not "attempt[]

to clarify anything before acting" and "lost sight of proper police work" by fixating preliminarily on the Plaintiff instead of the actual criminals. Pl.'s Response Br. at 1, 4. While these allegations might point to a negligent or sloppy investigation, they do not describe any action that would have been unjustifiable as wholly arbitrary or irrational. Thus, even accepted as true, the Plaintiff's allegations of a negligent investigation do not describe a brutal or inhumane abuse of official power and do not rise to the level of shocking the Court's conscience. Therefore, these allegations cannot support a valid substantive due process claim.

While the Plaintiff also alleges more specifically that Officer Bacigalupi conveyed false and "intentionally deceptive" information to Magistrate Robinson to obtain the search warrant for the evening search of the Plaintiff's residence, the Plaintiff has not alleged that Defendant Back was involved in the alleged deception in any way. In fact, Defendant Back's only known involvement in the circumstances of this case appears to have been (1) questioning the Plaintiff after the search of her residence and prior to her being handcuffed and transported to the Henrico Police Department's "West-end Station, and (2) based on the Plaintiff's September 7, 2007 handwritten "confession" statement, securing a felony arrest warrant in James City County related to the Plaintiff's admitted participation in the alleged breaking and entering of the Wm. & Mary Recreation Center Commons. Though the Plaintiff was, in fact, arrested on September 26, 2007 by an unnamed officer pursuant to the arrest warrant secured by Defendant Back, the Plaintiff has not alleged any facts that would suggest that Defendant Back obtained the warrant unlawfully.

Therefore, even construing the facts in the light most favorable to the Plaintiff, the Plaintiff's allegations related to Defendant Back are not sufficiently conscience-shocking such that she can state a claim for substantive due process relief that is plausible on its face. Accordingly, the

Plaintiff's claim is one for which relief cannot be granted, and the Court will grant the Defendant's motion to dismiss the Plaintiff's substantive due process claim.

### (2) Fourth Amendment

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. const. amend iv. "The essential purpose of the proscriptions in the Fourth Amendment is to impose a standard of 'reasonableness' upon the exercise of discretion by government officials, including law enforcement agents, in order to safeguard the privacy and security of individuals against arbitrary invasions … ." *Delaware v. Prouse*, 440 U.S. 648, 653-54 (1979) (internal quotation marks omitted). Thus, the permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests. *Id.* at 654. With these principles in mind, the Court will address each of the Plaintiff's Fourth Amendment claims in turn.

### (i) Unlawful Arrest

The Plaintiff alleges that her arrests on September 6, 2007 and September 26, 2007 were unreasonable seizures under the Fourth Amendment. The Court will address the arrests in turn.

### (a) September 6, 2007 Arrest

The Plaintiff's September 6, 2007 arrest was made by Officer Bacigalupi pursuant to the arrest warrant issued by Magistrate Marla McCormick that had been secured by Officer Millan. The Plaintiff's Complaint, at best, indicates that Defendant Back was present at her September 6, 2007 arrest. The Court liberally, and generously, construes the Plaintiff's Complaint as alleging that Defendant Back "seized" the Plaintiff on September 6, 2007 in conjunction with Officer Bacigalupi.

With certain exceptions, "the Fourth Amendment requires a warrant and probable cause before the government may conduct a particular search or seizure . . . ." *County of Allegeny v. Am. Civil Liberties Union Greater Pittsburgh Chapter*, 492 U.S. 573, 606 (1989). As the Plaintiff does not dispute the fact that Officer Bacigalupi arrested her pursuant to Magistrate McCormick's felony arrest warrants, the Court construes her Complaint as alleging that the arrest warrants were invalid because they were not supported by truthful probable cause representations.

To succeed on a claim that a "seizure was unreasonable because it followed from a warrant affidavit that was deficient because it was dishonest," the Plaintiff must prove that Officer Millan – the swearing officer – "deliberately or with a 'reckless disregard for the truth' made material false statements in his affidavit, or omitted from that affidavit 'material facts with the intent to make, or with reckless disregard of whether they thereby made, the affidavit misleading.'" *Miller*, *supra*, 475 F.3d at 627 (citations omitted). "Reckless disregard" can be established by evidence that an officer acted "with a high degree of awareness of [a statement's] probable falsity," that is, "when viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." *Id.* (quoting *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000)). With respect to omissions, "reckless disregard" can be established by evidence that a police officer "failed to inform the judicial officer of facts [he] knew would negate probable cause." *Id.* (quoting *Beauchamp v. City of Noblesville, Inc.*, 320 F.3d 733, 743 (7th Cir. 2003)). A plaintiff's "allegations of negligence or innocent mistake" by a police officer will not provide a basis for a constitutional violation. *Id.* at 627-28 (quoting *Franks v. Delaware*, 438 U.S. 154, 171 (1978)). Moreover, in order to violate the Constitution, the false statements or omissions must be "material," that is, "necessary to the [neutral and disinterested magistrate's]

finding of probable cause." *Id.* (quoting *Franks*, *supra*, 438 U.S. at 155-56). To determine materiality, a court must "excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the 'corrected' warrant affidavit would establish probable cause." *Id.* (quoting *Wilson*, *supra*, 212 F.3d at 789). If the "corrected" warrant affidavit establishes probable cause, no civil liability lies against the officer. *Id.*

In the case at bar, Defendant Back appears to have played absolutely no role in obtaining the underlying arrest warrants, as they were sworn out by Officer Millan and issued by Magistrate McCormick. Further, Defendant Back played little, if any, role in actually "seizing" the Plaintiff on September 6, 2007. To the extent that the Defendant played any role, the Plaintiff's memorandum in opposition to the Defendant's motion to dismiss alleges only that "[b]oth Officers Bacigalupi and Back worked in concert and appear to have been assisted and/or improperly supervised by [Officer] Millan." Pl.'s Opp'n Mem. at 5. However, this mere blanket allegation that Defendant Back "worked in concert" with Officer Bacigalupi and that Officer Millan "assisted and/or improperly supervised" the Defendant in some general way simply does not rise to the level of being a factually sufficient basis to support an argument that the arrest warrant issued by Magistrate McCormick was constitutionally deficient or that the Plaintiff's arrest was "unreasonable" in any way. The Plaintiff has not alleged facts that indicate that Officer Millan made any material false statements or omitted any material facts in his affidavit that made the affidavit misleading, and nothing before the Court indicates that Magistrate McCormick's finding of probable cause was unjustified. Thus, the facts indicate that Officer Millan's warrants were properly obtained. "Where an arrest is made under authority of a properly issued warrant, the arrest . . . is not unconstitutional, and a complaint based on such an arrest is subject to dismissal for failure to state a claim." *Smith v. Gonzales*, 670 F.2d

522, 526 (5th Cir. 1982) (citations omitted).  Accordingly, the Plaintiff has not alleged sufficient

facts to support an unlawful arrest claim against the Defendant for her September 6, 2007 arrest, and

the Court will dismiss the claim.

### (b) September 26, 2007 Arrest

The Plaintiff's September 26, 2007 arrest was made by an unnamed police officer pursuant

to the arrest warrant issued in James City County that had been secured by Defendant Back.  The

warrants were obtained based on information given to authorities by the Plaintiff herself in her own

handwritten "confession" after having waived *Miranda* following a first valid arrest on September

6, 2007.  The Plaintiff has not alleged facts that suggest in any way that the Defendant made any

material false statements or omitted any material facts in his affidavit to the James City County

magistrate that made the affidavit misleading, and nothing before the Court indicates that the James

City County magistrate's finding of probable cause was unjustified.  Further, the Defendant did not

physically carry out the arrest, and the facts, as alleged by the Plaintiff, considered in the light most

favorable to her, fail to state a claim upon which relief can be granted.  Accordingly, the Court will

dismiss the Plaintiff's claim that her September 26, 2007 arrest was unreasonable.

### (ii) Excessive Force

The Defendant argues that the Plaintiff's Complaint fails to state a Fourth Amendment claim

for excessive force under § 1983.  The Court determines whether an officer has used excessive force

to effect a seizure based on a standard of "objective reasonableness."  *Jones v. Buchanan*, 325 F.3d

520, 527 (4th Cir. 2003).  Id. at 399, 109 S.Ct. 1865.  The Court considers the facts "from the

perspective of a reasonable officer on the scene," and avoids judging the officer's conduct with the

"20/20 vision of hindsight," recognizing that "police officers are often forced to make split-second

judgments – in circumstances that are tense, uncertain, and rapidly evolving." *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396-97 (1989)). The Court does not consider the officer's "intent or motivation." *Id.* (quoting *Elliott v. Leavitt*, 99 F.3d 640, 642 (4th Cir.1996)). Rather, "the question is whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." *Id.* (citing *Elliott*, *supra*, 99 F.3d at 642).

The Court weighs "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* (quoting *Graham*, *supra*, 490 U.S. at 396). This test requires the Court to determine the reasonableness of an officer's actions and is "not capable of precise definition or mechanical application." *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)). Instead it "requires careful attention to the facts and circumstances of each particular case." *Id.* (quoting *Graham*, *supra*, 490 U.S. at 396). Those facts and circumstances include (1) "the severity of the crime at issue," (2) whether the "suspect poses an immediate threat to the safety of the officers or others," and (3) whether the suspect "is actively resisting arrest or attempting to evade arrest by flight." *Id.* (quoting *Graham*, *supra*, 490 U.S. at 396). The extent of the plaintiff's injury is also a relevant consideration. *Id.* (citing *Rowland v. Perry*, 41 F.3d 167, 174 (4th Cir. 1994)). The "question [is] whether the totality of the circumstances justified a particular sort of . . . seizure." *Id.* at 527-28 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)).

The "particular sort of seizures" at issue in the case at bar were seizures effectuated with little, if any, force. The Plaintiff was arrested twice – once in her residence and once in class. However, the Plaintiff does not complain of any physical injury she suffered as a result of force used during either arrest. While the Plaintiff complains about having been "shackled and escorted by two

armed, sizable Caucasian men," she does not allege that the shackles were fastened too tightly or that the "armed, sizable Caucasian men" caused her any injury. Pl.'s Opp'n Mem. at 3. The Plaintiff never even alleges that the Defendant was one of the officers who physically placed her in handcuffs and escorted her to jail. Even so, shackling an arrestee in itself is not unreasonable force. *Cooper v. City of Virginia Beach, Va.*, 817 F. Supp. 1310, 1315 (E.D. Va. 1993) ("[H]andcuffing [an] arrestee does not constitute unreasonable force.") (citation omitted) (collecting tight-handcuff cases). There is simply no indication that anyone, much less the Defendant, used any particular force as would be unjustified under the circumstances in the mind of a reasonable officer. Accordingly, the Court will grant the Defendant's motion to dismiss the Plaintiff's Fourth Amendment claim for excessive force under § 1983.

### (iii)    Unlawful Search

The Defendant has not moved to dismiss the Plaintiff's Fourth Amendment claim for the unlawful search of her residence. Accordingly, the Court will not reach the issue of whether the Plaintiff's unlawful search claim is validly stated in her Complaint, and the claim will not be dismissed.

### (iv)    Unlawful Seizure of Property

The Defendant has not moved to dismiss the Plaintiff's Fourth Amendment claim for unlawful seizure of property related to the GMU police's confiscation of her two computers, a jump drive, and some assorted papers from the residence. Accordingly, the Court will not reach the issue of whether the Plaintiff's unlawful seizure of property claim is validly stated in her Complaint, and the claim will not be dismissed.

### (v)        Malicious Prosecution

Though the Defendant has not moved expressly to dismiss the Plaintiff's Fourth Amendment malicious prosecution claim, the Court, as explained herein, construes the Defendant's motion to dismiss the Plaintiff's unlawful arrest claim as having also moved to dismiss the Plaintiff's § 1983 malicious prosecution claim. The Fourth Circuit acknowledges that "it is not entirely clear whether the Constitution recognizes a separate constitutional right to be free from malicious prosecution." *Snider v. Lee*, 584 F.3d 193, 199 (4th Cir. 2009) (citing *Albright v. Oliver*, 510 U.S. 266, 279-80 n.5 (1994) (Ginsburg, J., concurring) and *Lambert v. Williams*, 223 F.3d 257, 261-62 (4th Cir.2000)). Nevertheless, the Fourth Circuit has recognized "a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort [of malicious prosecution]." *Burrell v. Virginia*, 395 F.3d 508, 514 (4th Cir. 2005). To state such a claim, a plaintiff must allege (1) that the defendant seized the plaintiff pursuant to legal process that was not supported by probable cause and (2) that the underlying criminal proceedings have terminated in the plaintiff's favor. *Id.* (citing *Brooks v. City of Winston-Salem*, 85 F.3d 178, 183-84 (4th Cir. 1996)). "An officer has probable cause for arrest when the facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Id.* (citing *Wilson v. Kittoe*, 337 F.3d 392, 398 (4th Cir. 2003)). "Although malice is required to state a claim for malicious prosecution at common law, the reasonableness of a seizure under the Fourth Amendment should be analyzed objectively." *Id.* at 514 n.5. Therefore, "the subjective state of mind of the defendant, whether good faith or ill will, is irrelevant in this context." *Brooks*, *supra*, 85 F.3d at 184 n.5.

As previously discussed in section IV(A)(2)(i) herein, the Plaintiff has not stated a claim for unlawful arrest under §1983 because she failed to allege facts that indicate in any way that the Defendant arrested, or "seized," her on September 6, 2007 without a proper warrant supported by valid probable cause. Relatedly, the Plaintiff failed to allege facts that indicate in any way that Defendant Back improperly secured the arrest warrant that led to the Plaintiff's September 26, 2007 arrest. Accordingly, even though it appears that the underlying criminal proceedings terminated in the Plaintiff's favor because all charges were either dismissed or *nolle prossed*, the Plaintiff has failed to state a § 1983 malicious prosecution claim, and the Court will dismiss it.

### B.      Malicious Prosecution Under Virginia Law

The Court has also construed the Defendant's motion as having moved to dismiss the Plaintiff's state law malicious prosecution claim. In Virginia, a plaintiff in a malicious prosecution case must prove "by a preponderance of the evidence that the prosecution was: (1) malicious; (2) instituted by, or with the cooperation of, the defendant; (3) without probable cause; and (4) terminated in a manner not unfavorable to the plaintiff." *Hudson v. Lanier*, 497 S.E.2d 471, 473 (Va. 1998). The Plaintiff's Complaint states that law enforcement proceeded with the Plaintiff's arrest "without factual and prudent reasoning" and with "malice," and that the charges against her were either dismissed or *nolle prossed*. These are, however, merely "labels and conclusions" that amount to little more than "a formulaic recitation of the elements of a cause of action." *Twombly*, *supra*, 550 U.S. at 555. Again, the Plaintiff failed to allege facts that, even considered in the light most favorable to her, indicate that either the Plaintiff's September 6, 2007 arrest or the Plaintiff's September 26, 2007 arrest constituted unreasonable seizures effectuated without probable cause. Therefore, the Plaintiff's Complaint, with respect to her state law malicious prosecution claim,

simply "tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" *Iqbal*, *supra*, 556 U.S. at ----, 129 S.Ct. at 1949 (quoting *Twombly*, *supra*, 550 U.S. at 557). Accordingly, the Plaintiff has not alleged sufficient factual matter to state a Virginia malicious prosecution claim for relief that is plausible on its face, and the Court will dismiss the claim.

## V. GHOST-WRITER WARNING

The *pro se* Plaintiff has indicated that she filed her suit in federal court because she was "*advised* that [she] would not (likely) receive an impartial and just judgment from a local jurisdiction." Pl.'s Compl. at 5 (emphasis added). To the extent that the Plaintiff is being advised by counsel in a "ghost-writer" capacity, such a practice is strongly disapproved as unethical and as a deliberate evasion of the responsibilities imposed on attorneys, and this Order serves as a warning to that attorney that his actions may be unethical and could serve as a basis for sanctions. *See Clarke v. United States*, 955 F. Supp. 593, 598 (E.D. Va. 1997); *Laremont-Lopez v. Se. Tidewater Opportunity Ctr.*, 968 F. Supp. 1075, 1080-81 (E.D. Va. 1997) ("[T]he practice of ghost-writing legal documents to be filed with the Court by litigants designated as proceeding *pro se* is inconsistent with the procedural, ethical and substantive rules of this Court."); *Chaplin v. DuPont Advance Fiber Sys.*, 303 F. Supp. 2d 766, 773 (E.D. Va. 2004) (quoting *Laremont-Lopez*, 968 F. Supp. at 1077, 1080) ("[T]his Court 'considers it improper for lawyers to draft or assist in drafting complaints or other documents submitted to the Court on behalf of litigants designated as *pro se*,'" and "the practice of ghost writing documents 'will not be tolerated in this Court.'").

## VI. CONCLUSION

For the foregoing reasons, the Plaintiff's Complaint is not sufficient under Rules 8(a)(2) and 12(b)(6) of the Federal Rules of Civil Procedure to state a claim for relief that is plausible on its face

as to Counts One, Two, Three, Six, and Seven, and the Court will grant the Defendant's motion to dismiss these five counts. The Defendant did not move to dismiss Counts Four or Five, so these two counts remain. An appropriate Order shall issue.


April 29, 2010           /s/
DATE          RICHARD L. WILLIAMS
            SENIOR UNITED STATES DISTRICT JUDGE